KENNEDY, Justice.
AmSouth Bank, N.A., a National Banking Association (“AmSouth”), as agent for the beneficiaries and their successors in interest to a trust established by the will of Cora Ely Gregg, and other plaintiffs filed an action to recover from Allright Birmingham, Inc. (“Allright”), “back” rent allegedly owed the beneficiaries of the trust pursuant to a lease agreement. The case was tried without a jury, and the trial court entered a judgment holding that the plaintiffs were not entitled to recover from All-right.
On January 6, 1956, Durrell M. Caroth-ers leased from the First National Bank of Birmingham, a predecessor of AmSouth, a piece of property that he intended to use “as a parking and storage lot for automotive vehicles”; the First National Bank of Birmingham was acting in its capacity as trustee of the estate of Cora Ely Gregg. Mr. Carothers, who was at that time a principal in several related parking lot enterprises throughout the country, ultimately assigned his interest in the lease to Allright.
The lease was for a term of 30 years, beginning October 1, 1956, and it contained *225 the following provision, the interpretation of which is the basis for this action:
“The sum or sums herein agreed to be paid as rent are payable at the value of current United States money as determined by the Index of the purchasing power of the dollar known as the Bureau of Labor Standards Consumer Index of 1947-49 [we refer to this as the “1949 Consumer Price Index” [1]] and it is expressly provided that the rent herein agreed to be paid shall, on the fifth annual anniversary date of this lease and each fifth year thereafter during the term of this lease, be adjusted for the ensuing five-year period by multiplying the sum herein provided as annual rental by the value of the dollar as of the date the adjustment is made and dividing the result by the current value of the dollar as determined by said Bureau of Labor Standards Consumer Index of 1947-49, (which is hereby established at and stipulated to be 114.9, being the value as of the date when this lease is executed according to the above described index, using in all cases its ‘all items’ figure). The index used shall be the United States Department of Labor Consumer Index for the year 1947-49 and the ‘all items’ figure shown by said Index unless some other index is mutually agreed upon by the parties to this agreement. In the event said Index is discontinued and the parties to this agreement are unable to agree upon a substitute therefor, then at the beginning of such five-year period the sum herein provided as annual rental shall be adjusted so as to decrease or increase the same in such a manner as may be commensurate with such change in rentals of comparable properties in the downtown area of Birmingham as may have occurred since the beginning of the term of this lease.”
From October 1, 1956, through September 30, 1961, the first five years of the lease, Allright paid rent of $750 monthly. During the second five years of the lease, October 1, 1961, through September 30, 1966, the rent was calculated based on the 1949 Consumer Price Index (we abbreviate Consumer Price Index as “CPI”) pursuant to the rent adjustment clause, and Allright paid $838 monthly. For the third five-year period of the lease, from October 1, 1966, to September 30, 1971, the rent was again calculated based on the 1949 CPI pursuant to the rent adjustment clause. For the period October 1, 1971, to September 30, 1976, the rent was raised, based on the rent adjustment clause, but this time the 1967 CPI was used to calculate the rent due, because the Bureau of Labor Statistics of the United States Department of Labor, which calculates the CPI, had begun using 1967 instead of 1949 as the primary base year for the CPI. For that period the rent was $1,138 monthly. Again using the 1967 CPI as the basis for calculating the rent increase pursuant to the rent adjustment clause, for the period October 1, 1976, through September 30, 1981, Allright paid increased rent of $1,601 per month. In 1978, the CPI was again recalculated by the Bureau of Labor Statistics. In 1981, Allright was informed that its rent for the October 1, 1981, to September 30, 1986, period would be $6,070 monthly.
At that time, Allright informed the plaintiffs that the method employed in the 1978 recalculation of the CPI worked such a fundamental change in its application to the rent adjustment clause that the 1949 CPI was effectively “discontinued” and that it would pay rent pursuant to the terms of the lease that provided that in the event the 1949 CPI was “discontinued,” rent would be paid in a “manner as may be commensurate with such change in rentals of comparable property in the downtown area of Birmingham.”
The basis of Allright’s argument is succinctly explained in the affidavit of Jackson Payne, Allright’s expert on CPI clauses in leases:
*226 “The Consumer Price Index (CPI) has existed in some form since 1913. Within the broad term ‘CPF there have existed a number of different indices. One of those was the Index for the year 1947-49 which contained an ‘all items’ figure. While the actual CPI for that period used terminology different from that used in the lease, I assumed that the drafter was referring to the ‘U.S. City Average (1947-49 = 100) All Items Index,’ of the Consumer Price Index for all urban consumers. That Index was discontinued in 1967 and was replaced by the Consumer Price Index for ‘All Urban consumers— (CPI-U-U.S. City Average (1967 = 100) All Items.’ In 1978, the U.S. City Average Index was further modified and is now referred to as the ‘All Items and Major Group Figures for All Urban Consumers,’ the ‘CPI-U.’ Within the CPI-U is the narrow index referred to as the ‘All Items and Major Group Figures for Urban Wage Earners and Clerical Workers,’ otherwise known as the ‘CPI-W.’ The ‘U.S. City Average Index’ as such no longer exists, nor does the ‘Consumer Index of 1947-49 — All Items.’ ”
“If one assumes, as I have for the purposes of this affidavit, that the drafter of the rental adjustment clause meant to refer to the ‘U.S. City Average (1947-49 = 100) All items Index,’ and that assumption is correct, then that index was discontinued in 1967 and the succeeding indices were substantially altered in 1978 by division in the CPI-U and CPI-W. If that assumption is not made, or is incorrect, then one cannot determine what the drafter originally meant. Neither the CPI-U nor the CPI-W are direct, exact successors to the 1947-49 CPI.”
The plaintiffs disagree, of course. Based on expert testimony by an economist, they contended at trial and contend again in their brief filed in this Court:
“The ‘Index’ referred to in the Lease is the CPI. The words ‘1947-49’ in the Lease refer to the base year. The ‘Index’ has not been ‘discontinued.’ The United States Department of Labor continues to publish the CPI. The only thing that has been ‘discontinued’ is the primary use of the 1947-49 base year. Even [now] the Bureau of Labor statistics continues to publish the CPI using the various base years, and, what’s more important, the use of various base years makes no difference in the rent calculation, [because all of the base periods are related as percentage changes].”
It is undisputed that the United States Department of Labor Bureau of Labor Statistics still publishes the 1949 CPI, which was the index referenced in the lease, and the 1967 CPI-U, as well as conversion tables to allow conversion between the two indices; likewise, it is undisputed that the base year of the CPI has been changed a number of times since the execution of the lease. As the use of a particular base year begins, the previous base year is no longer used as the primary base year of the CPI. Nevertheless, it is possible, using the tables published by the Bureau of Labor Statistics, to calculate the relationship between CPIs’ amount of change with different base years, because all of the CPIs are numerically related by percentage changes in their calculation from base year to base year.
Accordingly, the plaintiffs contend, the only thing that has been discontinued is the use of 1947-49 as the base year of the CPI, not the CPI itself. Considering all this, the plaintiffs argue, Allright’s entire argument boils down to the assertion that the creation of the CPI-U in 1967 means that the 1949 CPI was “discontinued.”
The plaintiffs presented the following table and comments on the table to show that by using the CPI referred to in the lease, the rent can be calculated in accordance with the terms of the lease and that the calculation of the rent increase under the 1949 CPI and the 1967 CPI will yield virtually identical results:
*227 “To illustrate the total fallacy of Allright’s argument, the following table has been extracted from the CPI’s to show that there is no difference between the CPI-U (1967 = 100) and the CPI (1947-49 = 100). The table was developed from the evidence in the record from the certified copies of the Consumer Price Index from the United States Department of Labor, Bureau of Labor Statistics. The figures extracted from the CPIs were all for the month of September in the years 1971 through 1981 in order to get a comparison for the benefit of the court during the period of time in question and for the previous ten years.
“TABLE SHOWING THE CPI (1947-49 = 100)
“TO BE IDENTICAL TO THE CPI-U (1967 = 100)
“YEAR “CPI 1947-49 = 100* CPI 1947-49 = 100 X .7007708** CPI 1947-49 = 100 (CPI-U)*** CPI 1947-49 = 100 (CPI-W)****
“Sept. 1971 174.4 122.2 122.2 122.2
“Sept. 1972 180.1 126.2 126.2 126.2
“Sept. 1973 193.4 135.5 135.5 135.5
“Sept. 1974 216.5 151.7 151.7 151.7
“Sept. 1975 233.5 163.6 163.6 163.6
“Sept. 1976 246.3 172.6 172.6 172.6
“Sept. 1977 262.6 184.0 184.0 184.0
“Sept. 1978 284.4 199.3 199.3 199.1****
“Sept. 1979 318.8 223.4 223.4 223.7****
“Sept. 1980 359.2 251.7 251.7 251.9****
“Sept. 1981 398.6 279.3 279.3 279.1****
Considering the entire record, we hold that the trial court erred when it entered the judgment for Allright. The record plainly shows that the CPI was not “discontinued”, but that, as the plaintiffs contend, the base year of the CPI was merely *228 changed. The creation of the CPI-U in 1967 did not mean that the 1949 CPI referred to in the lease was “discontinued.” The judgment is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, STEAGALL*, and INGRAM, JJ., concur.
HOUSTON, J., dissents.

. The Consumer Price Index is a price index computed and issued monthly by the Bureau of Labor Statistics of the United States Department of Labor. The index tries to track the price level of a group of goods and services purchased by the average consumer. Black’s Law Dictionary, (5th ed. 1979).

"* CPI (1947-49 = 100): This column represents the figures using the 1947-49 = 100 base year for September.

"** CPI (1947-49 = 100) x .7007708: This column was developed using the 1947-49 = 100 base year times the conversion factor of .7007708 published by the United States Department of Labor, Bureau of Labor Statistics, to convert the 1947-49 base year to the 1967 base year.

"*** CPI (1967 = 100) is the CPI-U. It should be noted that the figures for the CPI-U from 1971 to 1981 are identical to the figures for the CPI (1947-49 = 100) times the conversion factor published by the United States Department of Labor, Bureau of Labor Statistics. This shows unequivocally and it is uncontradicted that the CPI-U (1967 = 100) is identical after conversion to the CPI (1947-49 = 100) and that the results of the rent escalation using either would be identical.

“ **** CPI (1967 = 100) (CPI-W): The CPI-W is identical to the CPI-U (1967 = 100) and to the CPI (1947-49 = 100) from the beginning until 1978. At that time, because of the changes testified to by both Dr. Johnston [Amsouth’s expert witness] and by Mr. Payne, there is a slight difference between the results which one would obtain if one were to use the CPI-W from 1978 forward. This difference, however, is immaterial since there is no allegation by the Beneficiaries, nor by Allright that any party suggested or agreed to use the CPI-W for the 1981 increase. Since no party proposed or agreed to use the CPI-W, the fact that there is a minor difference between it and the CPI-U is immaterial.”